UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CLARENCE J. FAULKNER,

    Plaintiff,

v.

SHANE MAITLAND *et al*.,

    Defendants.

Case No. C08-5038RJB/JKA

REPORT AND RECOMMENDATION

**NOTED FOR:**

**DECEMBER 19, 2008**

This Civil Rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. § 636(b)(1)(B) and Local Magistrate Judges' Rules MJR 1, MJR 3, and MJR 4. Before the court is defendants' motion for summary judgment (Dkt # 32). Plaintiff has responded (Dkt # 33). Defendants have replied (Dkt. # 34). This matter is now ripe for review.

## FACTS

This action involves and ongoing dispute between Mr. Faulkner and the mailroom staff at Mc Neil Island Corrections Center. This complaint raises issues regarding a mail rejection by the mailroom on December 27, 2007. Plaintiff further asserts he sent a box of books to the mailroom on December 28, 2007, that the box was not mailed, and that he received no mail rejection notice. (Dkt. #5). The facts surrounding other mail rejections and infractions for refusing to follow orders are germane to this action as

Mr. Faulkner alleges retaliation, "harassment," after he complained about the handling of his mail.

On December 27, 2007, defendant Lonnie Harrell, who works in the mailroom, authored a message regarding Mr. Faulkners' mail. The message reads:

> FYI . . . Awhile back (exact date unknown < 3 months), Faulkner sent a small box to the mailroom complete with a postage transfer which stated the box contained personal books he needed to mail out. Upon closer inspection, I discovered 4 small wooden toys mixed in with the books. I sent the box back to him along with a copy of the hobby shop item regulations and a note indicating that he could mail the books out but not the toys. **I checked with the hobby shop supervisor and it was confirmed that Faulkner did not have a hobby permit.** All staff in the mailroom witnessed the fact that the toys were in the box before I sent it back to him. A few days later the box returned to the mailroom only containing books along with a kite stating that the toys never existed. It was obvious at that point that Faulkner was playing a game with us. On 12/21/07, Faulkner sent another box to us. On the postage transfer form it states it contains books only. Again, after complete inspection I discovered a large manila state envelope with a non-cancelled 80 cent stamp on it. The envelope was empty but obviously on it's way to another party to utilize for some unknown reason. I also discovered six small wooden trucks (value unknown) in the box. Same game as last time. Also enclosed is a note to "Laura" that states "Here's a few more vehicles for your car lot." I can only speculate, but there is a possibility that the first toys (which were small wooden cars) were smuggled out of here after they were returned to him because they did not go out through the MICC mailroom. This time I confiscated the manila envelope, the stamp, and the wooden trucks. Faulkner was sent outgoing mail restriction number 7-12-93 today. What I am wondering is where is he getting these toys and the stamped manila envelopes. Does he have contraband in his house? I have been monitoring the situation and thought your staff might look into this. The items will be kept in the mail restriction file until further notice. Your staff might come up with other important additional facts that may lead to the whole enchilada. Thanks.

(Dkt. # 33, Exhibits page 9)(emphasis added). Contrary to the information defendant Harrell relied on, Mr. Faulkner had obtained a hobby craft permit to do wood work. The permit was valid as of October 1, 2007.

On December 28, 2007, Mr. Faulkner's cell was searched "for cause." The term, "for cause," denotes the search was not random but instead was based on a suspicion Mr. Faulkner may have had contraband in his cell. Minimal contraband was found; extra linen, pine cones, and a container of eye glass repair screws (Dkt. # 5, complaint page 3). None of the named defendants in this action participated in the search of Mr. Faulkner's cell.

Mr. Faulkner sent a letter to headquarters concerning the appeal process for contesting rejected mail, and a discrepancy with regard to whom an inmate appeals a mail rejection. On January 4, 2008, he received a response from Mike Kenney. On January 6, 2008, two boxes of plaintiff's property were found in a "wet cell" in Mr. Faulkner's living unit. Correctional Officer Moore gave the boxes to plaintiff and noted the date and unusual circumstances. As the court understands the use of the term "wet cell" it is a

REPORT AND RECOMMENDATION
Page - 2

cell with a working sink and toilet, it is not literally wet.

Mr. Faulkner alleges that when the boxes in the "wet cell" were given to him on January 6, 2008, it was the first time he learned of the December 27, 2007 mail rejection. A copy of the rejection was taped to one of the boxes. The other box was a box of books plaintiff had allegedly sent to the mailroom to be sent out on December 28, 2007. Although the prison policy gives an inmate only ten days to appeal the December 27, 2007, mail rejection, Mr. Faulkner was allowed to file a late appeal under these circumstances.

On January 14, 2008, his appeal was granted in part and the six toy trucks that had been confiscated were returned to him. The envelope with unused postage was considered contraband. In granting the appeal Associate Superintendent Poteet noted that Mr. Faulkner had signed a copy of the hobby rules since this incident. She ordered Mr. Faulkner to mail all hobby craft items in accordance with the hobby craft rules (Dkt. # 32, Exhibits, January 14, 2008 mail rejection appeal).

The records reflect Mr. Faulkner using the hobby area to mail out items on December 5, 2007, December 8, 2007, and December 15, 2007. Thus, prior to the December 27, 2007 mailroom rejection, plaintiff was aware of how to mail his hobby craft items out of the facility. On December 8, 2007, he mailed out "4 wooden toys" and a clock. According to Mr. Faulkner, the four wooden toys are the toy cars he tried to send out through the mailroom that are referenced in Defendant Harrell's memo. Contrary to Mr. Faulkner's assertions, the toy cars went out through the hobby craft area, not through the mailroom See, (Dkt. 33, Exhibit 1, Attachments H and I).

On August 8, 2008, Mr. Faulkner received a major infraction for attempting to send out a postcard. Mr. Faulkner had been repeatedly told postcards are not allowed.

Plaintiff seeks an injunction forcing the defendants to follow their own policies, an injunction prohibiting retaliation for the filing of this action, and one hundred dollars a day for each day the package containing the books and the toy trucks were held (Dkt. # 5). Presumably the plaintiff's monetary damages is for the period, December 27, 2007, to January 14, 2008. If that is the case, the dollar amount sought is One Thousand Eight-Hundred Dollars.

Plaintiff alleges lack of due process. As his right to send mail is at issue, the case also implicates the First Amendment.

REPORT AND RECOMMENDATION
Page - 3

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). See also Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases. Anderson, 477 U.S. at 254; T.W. Elec. Service Inc., 809 F.2d at 630. The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradicts facts specifically attested by the moving party. Id.

The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in hopes that evidence can be developed at trial to support the claim. T.W. Elec. Service Inc., 809 F.2d at 630 (relying on Anderson, supra). Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

## DISCUSSION

Prisons have the authority to inspect incoming and outgoing mail. Procunier v. Martinez, 416 U.S. 396 (1974). The test used to gauge the constitutionality of the prisons action depends on several factors.

Incoming mail, poses a greater threat to the facility, prison officials actions are therefore subject to less scrutiny. Turner v Safley, 482 U.S. 78 (1987). This less strict test also applies to inmate to inmate correspondence. Thournburgh v Abbott, 490 U.S. 401 (1989). Here, however, the court is considering outgoing mail not sent to another inmate. For a policy or rule to be constitutional, it must further an important government interest, and, the action taken must be no greater then necessary to protect that interest. Procunier v. Martinez, 416 U.S. 396 (1974).

Here, the court is addressing a policy that dictates how an inmate may send out toys or items he has made in prison. The policy requires plaintiff to send these items through the hobby craft area. The court is not addressing a complete ban on shipment, only a restriction on how the property is mailed. Neither party has briefed the penological reasons hobby shop items must be sent out through the hobby shop.

1. Six Toy Trucks confiscated on December 27, 2007.

Prison officials have a valid penological interest in insuring inmates do not obtain contraband or engage in activity that threatens the institution (Dkt. # 32, page 6). On December 27, 2007, defendant Harrell asserts he did not believe plaintiff had a hobby permit. Plaintiff does not contest that this was defendant Harrell's belief. Thus, Harrell would reasonably have believed the six toy trucks were contraband. Plaintiff's failure to declare the items, coupled with the fact that the box contained other contraband, unused postage, supports defendant Harrell's assumption. Further, less than three months before this incident there had been a similar incident. When the toys were returned to Mr. Faulkner the first time, Mr. Falukner sent the box back for mailing with a kite stating there were no toys. Confiscating the toys under the facts known to Mr. Harrell would have been logical to prove the items were in the box.

A prison official is entitled to qualified immunity from damages if they could have believed their actions constitutional under the facts known to them at the time they acted. Act Up!/Portland v Bagely, 988 F.2d 868 (9th Cir. 1993). Defendant Harrell is entitled to qualified immunity from damages on this claim.

Plaintiff alleges confiscation of the toys deprived him of due process. This argument fails. Plaintiff received notice of the rejection on January 6, 2008. While the timing of the notice did not comply with prison policy, plaintiff was allowed to file an appeal and ultimately prevailed to the extent the toys were returned and not destroyed. Further, the mailroom policy time lines are not jurisdictional, and failure to

follow them does not result in a "due process" violation. (Dkt. # 33, Exhibit 5, Attachment A, page 10 section H). Thus, the delay from December 27, 2007 to January 6, 2008 did not deprive plaintiff of the ability to utilize the appeal process.

Due process at a minimum requires notice and an opportunity to be heard. Procunier v. Martinez, 416 U.S. 396 (1974). Plaintiff received due process with regard to the December 27, 2007, rejection of his outgoing mail.

### 2. Box of books discovered January 6, 2008.

Plaintiff alleges he sent a box of books to the mailroom to be sent out on December 28, 2007, and that box of books was later found in the "wet cell" on January 6, 2008, and returned to him. Liability in a 42 U.S.C. 1983 action is based on personal participation. None of the named defendants acknowledge or admit to rejecting plaintiffs' box of books on December 28, 2007. Plaintiff has provided no proof the box of books ever arrived at the mailroom, or that any named defendant in this action was involved with placing the box in the "wet cell." Neither party has briefed the process for returning mail to an inmate.

A plaintiff must set forth the specific factual bases upon which he claims each defendant is liable. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 n.58 (1978). A theory of respondeat superior is not sufficient to state a claim under Section 1983. Padway v. Palches, 665 F.2d 965 (9th Cir. 1982). Here, plaintiff has named three defendants but has failed to set forth facts sufficient to establish that any of these defendants personally participated in causing the harm alleged.

Further, assuming plaintiffs facts as true, his books were not rejected. They were mailed after being found in the "wet cell." Thus, Plaintiff complains of a delay of just over nine days in mailing his box. Plaintiff has not shown any damages resulted from the delay. Where the delay is sporadic and relatively short term, less than 26 days, plaintiff fails to state a claim. Rowe v. Shake, 196 F 2d. 778 (7th Cir. 1999); Grady v. Wilken, 735 F 2d. 303 (8th Cir. 1984)( intentional delay of twenty days held constitutional).

### 3. Cell Search on December 28, 2007.

Inmates have no reasonable expectation of privacy in their cells or their possessions inside their cells. Hudson v. Plamer. 468 U.S. 517, 525-526, 104 S.Ct.3194, 3199-3200 (1984); Mitchell v. Dupnik,

75 F.3d 517 (9th Cir. 1996). In Dupnik, the Ninth Circuit held that jail officials did not violate a prisoner's constitutional rights by searching an inmate's legal papers in his cell outside the presence of the inmate. Further, plaintiff does not allege any named defendant participated in the search, although the record reflects defendant Harrell relaying information to plaintiff's living unit and indicated a search might be useful. Plaintiff's cell search claim does not rise to the level of a constitutional violation and should be dismissed.

    4.     Harassment or retaliation.

To establish a retaliation claim, an inmate must show that he was retaliated against for exercising constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994). The inmate has the burden of showing that retaliation was the substantial or motivating factor behind the conduct of the prison official and that the alleged retaliatory acts did not advance the legitimate goals of the institution or were not narrowly tailored to achieve such goals. Mt. Health City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Thomas v. Carpenter, 881 F.2d 828, 830 (9th Cir. 1989), cert. denied 494 U.S. 1028 (1990).

Plaintiff's claim of retaliation fails in this case. The search of his cell was in response to a concern regarding his possession of wood to make toys. Defendant Harrell was acting under the misinformation that plaintiff did not have a hobby permit. Further, the fact remains that plaintiff was attempting to mail out contraband in the form of unused postage. The cell search cannot be depicted as retaliation.

The finding of plaintiff's material in the "wet cell" has not been tied to any named defendant and plaintiff fails to show any of the named defendants in this action placed the items in that cell or were aware of the items being placed in the cell. Plaintiff fails to show any named defendant rejected his December 28, 2007 box. Accordingly, Plaintiff's last claim fails to survive summary judgment.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **December 19, 2008**, as noted in the caption.

DATED this 20 day of November, 2008.

                                                <u>/S/ *J. Kelley Arnold*</u>
                                                J. Kelley Arnold
                                                United States Magistrate Judge